Good morning, and may it please the Court, I am James Laughlin, and I represent the appellant Don Parkinson. With the Court's permission, I would like to reserve two minutes of my time for rebuttal. Thank you. This case presents two issues. Whether Mr. Parkinson is entitled to a new revocation hearing because of the due process violation at his initial hearing, and whether the facts in the record are sufficient to support that Mr. Parkinson actually violated the drug testing provision of a supervised release. Counsel, at this point, what difference does our decision make? Has he served the extra time in prison? Your Honor, he has served his three-month sentence in this case, and then he was put on a further period of supervised release. I just learned yesterday that he had been reviolated in mid-December for testing positive for marijuana, and at that point the judge imposed an 11-month sentence and terminated supervised release after that point. For that reason, I do not believe this case is moot, because if the Court determines that there's a due process violation and he shouldn't have been on supervised release, then he wouldn't have been violated again, is what you're saying? I'm not saying that, but what I'm saying is that, at a minimum, he has the remedy of getting the three months off of his 11-month sentence, if this Court determines that the proceeding that results from that three-month sentence was improper. Well, I have a question here, obviously, from the standpoint that what the witness that you wanted to testify was the gentleman that was present when the actual sample was taken? Mr. Colton. And the testing that was done, just so that I'm clear on the evidence, was that it was an invalid test because of too much water, and did they ever actually go forward and test it for whether there were any drugs in it, or is it just that there was too much water to make it an invalid test? Just that, Your Honor. My understanding is there's actually two tests that are done. The first test is done at the place where the urine sample is collected, and it's done on a refractometer, which checks the specific gravity of the sample, and that, I guess, determines how close to water it is, how many particulates it has that could be tested. Well, I guess what I'm struggling with here is, obviously, we know from direct testimony that the actual officer that testified, that was a woman, said she told him not to drink too much water. You know, that that would invalidate a test. That was before in the hearing. And also your client says he drank a lot of water. So what was this witness going to show? Well, Your Honor. I mean, if he said he drank a lot of water, then there was a lot of, you know, to me, then you would expect to find a lot of water in the test. So what would this witness show? But I don't think Mr. Parkinson's testimony establishes the actual fact that the urine sample was flushed, which is what the basis for the violation is, and I'll explain why. But did he say he drank a lot of water? He drank a lot of water. And he doesn't claim medical necessity here either, does he? Well, he does. He explained that he had medical necessity. Well, he said he, but he doesn't claim that they can't consider the test because I'm a diabetic. That was his explanation of why he drank a lot of water. That was his explanation as to why perhaps the sample may have had too much water in it. But I want to back up a step and focus on the decision to not put on Mr. Colton, the person who actually collected and tested the sample and who could have been cross-examined about that. Because that happened and because over defense objections the court allowed Probation Officer Young to just testify on hearsay about, oh, I heard that he gave the sample and I heard that it tested his water in the refractometer, basically that left Mr. Parkinson with no defense other than to take the position, okay, we'll have to assume that that test is correct because we can't attack the test because we don't have the person here that we can attack it with. So what we can do is say, well, maybe if it was a sample that had too much water in it, maybe we have an explanation for that. And that's what results in the testimony of him. Suppose we grant or assume that there was an error, a due process error, in not letting him cross-examine this absent witness. Assuming there is an error, how did it harm him? How is he prejudiced by it? It harmed him because he was deprived of the opportunity to cross-examine the one witness who had the relevant ---- Well, isn't there at least a 50-50 proposition that if he had, if the witness had been there, his lawyer would have said, no questions, that that witness could have done him more harm than good under cross-examination? I would not say that, Your Honor. Your Honor, I will acknowledge that we don't know what that testimony would have come out to be. It could have been that ---- But don't you need to make some sort of offer of proof on that? Well, I don't think we can. We were deprived. We get no opportunity to conduct pretrial discovery with Officer Colton. All we have, and that's the heart of the confrontation right that defendants have at trial, and as a component of the due process right, the right they have at a supervisory release revocation. There's no way to start challenging that until we can start asking Officer Colton the questions. He wasn't there. We couldn't say, how did you collect the sample? Did you use a clean cup? Did you use a dirty cup? Were you trained how to take these samples? Did you put them in the refractor meter properly? Did you make sure it wasn't contaminated? Right. Can we make a harmless, if we find a violation, can we make a harmless error assessment? Does the law allow us to do that? Well, yes. That's the next phase. The court has to decide whether the government can prove that the error is harmless beyond a reasonable doubt. I don't think it can do that because, as this Court knows, in applying harmless error doctrine on a frequent basis, the way that happens is you look, you disregard the evidence that should not have been admitted, in this case the hearsay testimony of Probation Officer Young, and say, is there anything left to prove the violation? And here, there's nothing left to prove the violation because the only evidence to show that when that sample came out of the refractor meter, it tested at. Well, there is. You have the test, and you have the female officer that says, I sent him in there to have this sample, and you have your client saying, I drank a lot of water, and I don't think he rebutted the fact that the probation officer said, or a parole officer or whatever, that don't drink a lot of water. And so you still do have all of that.  There's that issue of whether it's enough, but what you were saying is all that you have is nothing. Well, there is still something left. Well, let me clarify my position, please, Your Honor. What I meant to say was that you don't have anything that goes to the result of the test. And that is at the heart of the allegation in the petition. The one that was sustained was that he gave an invalid test. Now, everything Your Honor just pointed to gives the background facts. And we know that Probation Officer Young did tell Mr. Parkinson, if not the night before but on other occasions, that to have a valid test you should eat a good breakfast and not drink a lot. And we do know because Mr. Parkinson was put in the position of having to defend these charges without being able to attack the tests themselves, he said, he never said, you know what, I definitely had a flush sample. He doesn't know. He didn't do the test. What he could do is say, you know what, I was drinking a lot. Maybe that's what caused the test. If they're corrected as a flush sample, maybe that's what caused it. But I don't think his testimony can be used to infer that the test itself showed up flushed. Okay. Do you want to save the balance of your time? Yes, Your Honor. Thank you.  Thank you. Good morning. Good morning. May it please the Court. Douglas Miller, appearing for the United States. What this Court has been asked to determine first off is whether or not the defendant had a right to confront and cross-examine the probation officer that collected the urine sample for which his supervised release was revoked. What's important to note in evaluating that is that the right to confront and cross-examine at a supervised release or revocation is not equivalent to that at a criminal trial, as the Court is aware. And what the defendant made before the testimony came out with respect to what the probation officer would testify to was an objection on the grounds of hearsay. And that is the government's position to not raise the specter of Morrissey v. Brewer, where the Court would have to then go into a balancing test of whether or not the defendant had the right to cross-examine. But assuming ---- I don't understand that statement. Why isn't it once he says that he objects on the basis of hearsay, doesn't that bring into play whether or not the cross-examination is important and whether there's a violation of due process by not allowing it? Why isn't that in play, and why shouldn't there be a Morrissey balancing at that point? Your Honor, because what the Court said in Morrissey is that in the supervised release settings, or at least in its progeny, what they're looking at is trying to develop some flexibility. The defendant in the case of Martin before this Court was able to put forward, at least at the hearing, that he was contending that the results of that urinalysis were in dispute. And it's the government's position that when the defendant makes simply a hearsay objection without raising the issue of what or who it is that he needs to confront and cross-examine, the Court is left with little other than to treat it as a criminal proceeding. And because the Court in Morrissey distinguished between that right. Here the government didn't say, well, this particular witness is unavailable, he's sick, he's in New York. There was no excuse or reason for his not coming. Is that right? That's correct, Your Honor. What this Court noted in Comito, though, was that there are circumstances where mere inconvenience would be enough for the government to not put on a witness. And it's the government's position. But they don't even say that. The government doesn't even say that, do they? Well, I would argue that mere inconvenience is the same as saying that the same as saying nothing there, that we have chosen not to call this witness. And if there are circumstances in which mere inconvenience is sufficient, it's the government's position that this was one of them. That being because what the person the defense has asked he be allowed to confront and cross-examine was going to testify to was that the defendant's sample, the urine sample that he provided contained a lot of water, i.e., that it was diluted. And what the defendant admitted when he got on the stand was exactly that, that the urine sample that he submitted to his probation officer contained a lot of water. And because he had been given instructions by the probation officer prior to that not to drink copious amounts of water before submitting a urine sample, he was in violation. So if there wasn't an error committed by the court not engaging in this balancing test under Morrissey because simply by virtue of the fact once that hearsay objection was made, the court would have had to have gone into that balancing, that error was But he didn't admit the fact that the test was appropriate. You can't equate drinking a lot of water with a test that's invalid. Perhaps it could have been valid still. You can drink a certain amount of water and not disturb the test. So here it seems to me that the government had a little bit of a burden to show why they couldn't bring this officer in. Also, isn't it usual in these circumstances just to retest? This fellow says, I wasn't on drugs. Well, Your Honor, the defense pointed out in its papers that according to a 1997 article written to federal probation officers, that the normal procedure in these circumstances would be for them to go back to court and request a special condition that the person be specifically instructed not to drink large amounts of water prior to testing. But as this court held in its ruling in Duff, that those retrospective looking back at the court or at the decisions of the probation officer in hindsight as to what other alternatives were better or more suitable for this situation are not grounds to challenge the district court's ruling that a violation had occurred. So that was the procedure at least set out in this 1997 guidance for probation officers. It was not followed in this case, but it is the government's position that that should not disturb the district court's ruling that there was a violation. With respect to Duff, it brings us to the second issue of whether or not assuming that the defendant or, pardon me, that the witness did come forward and that that was not a violation as to what it was that she testified to, whether or not that constituted a violation on the terms and conditions of the supervised release. It's the government's position that it did in fact constitute such a violation because what the defendant had been ordered to do by the district court judge was to participate in the drug treatment program as directed by the probation officer or if directed by the probation officer. That in concert with the probation officer's obligation to facilitate, it's a statutory obligation, to facilitate the defendant's participation in and carrying out of the judge's orders was allowed to supplement that explicit instruction with her own instructions. And that authority was given pursuant to 3603. And that is consistent with authority by this Court that the probation officer, although instructions are not explicit in the court's order, probation officer has authority to supplement those instructions to facilitate the defendant's participation in supervised release. Here what the probation officer did was simply tell the defendant, if you are going to participate in drug treatment, the urine samples that you will provide must be ones that we can test. That is, you should not drink copious amounts of water prior to the testing. And it's the government's position that that was under death, that because that instruction was consistent with the court's order to participate in a drug treatment program, and because it was carried out pursuant to her statutory obligation to facilitate the defendant's participation in that program, that that instruction was one that, if violated, would constitute a violation of supervised release and could result in the defendant being incarcerated. This direction from her was somewhat vague. If she'd said you can't drink more than two glasses of water in the eight hours before you're tested, that might be something specific. But she says, don't drink copious amounts of water. And he says, well, because of my diabetes, I did drink a lot. Now, it's hard to think that that constitutes a proved violation on his part. That really gets at whether or not the defense that the defendant put on at the supervised release or revocation, if it was an abuse of discretion for the district court, to find a violation given the defense that this was done pursuant to or at least because of a medical condition. I think what the district court took into consideration in weighing that defense was whether or not the defendant had complied previously with the terms and conditions of the supervised release. And what came out in both the letter to the district court judge was that the defendant had twice submitted urine samples that tested positive for marijuana, had once missed drug testing, and on one occasion had missed drug treatment counseling. And I think that it was not an abuse of discretion for the court to say, given that history on supervised release, that the defendant's suggestion that this was a result of him consuming large amounts of water for medical purposes was not credible and that the court made the decision that this was probably something he did to avoid detection of further drug use. There was some back and forth between the district court judge and the defense counsel on this issue which raised whether or not if the defendant had this medical issue throughout drug testing in the drug testing program, why this was the first time that a diluted sample would come out. That is, if he had been drinking large amounts of water because of a medical condition that existed throughout drug treatment, why would this be the first sample that was diluted? And I think the district court said, given that the defendant, this was the first diluted sample, yet the medical condition was preexisting, that there was an effort to avoid detection. So I don't believe the district court's ruling on that regard was an abuse of discretion. And unless the court has further questions, I see my time is expiring. Thank you for your argument. Hello. I seem I don't have much time left, so, and I didn't get a chance to talk about the second issue which came up during the government's argument. So I was wondering if the Court had any questions to me about the second issue raised in the brief. There don't appear to be any. All right. In that case, I'll just summarize and say that I think that the probation officer has been delegated certain responsibilities to carry out the drug testing provisions, but what she can't do is she can't rewrite the provision itself. She can ask him to submit a non-flush sample so she can get a valid test, but if he gets a so-called invalid sample, that does not mean that she can rewrite the condition to say he's no longer participating in drug testing because of that. That should be done by the district court. All right. Thank you. Thank you for your argument. This matter will stand submitted. George Corey et al. v. Alberto Gonzalez, Case Number 03-710970472560.
judges: Goodwin, B. Fletcher, Callahan